**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| LASONIA MOULTRIE, ) | |
| ) | No. 2:10-cr-01197-DCN |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

This matter is before the court on petitioner Lasonia Moultrie's ("Moultrie") motion to vacate, set aside, or correct her federal sentence pursuant to 28 U.S.C. § 2255. The government filed a motion to dismiss, and Moultrie filed a motion for an evidentiary hearing. For the reasons set forth below, the court denies Moultrie's petition, denies Moultrie's request for an evidentiary hearing, and grants the government's motion to dismiss.

## I. BACKGROUND

On December 15, 2010, Moultrie was named one of thirteen co-defendants in a one count indictment charging Moultrie and her co-defendants with conspiracy to make and pass counterfeit business checks in violation of 18 U.S.C. § 371. At the time of her arrest, Moultrie was on supervised release relating to a 2004 charge of conspiracy to commit bank fraud. See United States v. Moultrie, No. 2:04-cr-00534. Moultrie was released on bond on January 5, 2011 but was arrested for violation of her bond on February 15, 2011. Moultrie entered a guilty plea on March 16, 2011 pursuant to a written plea agreement. The United States Probation Office prepared a Presentence Report ("PSR") in preparation for Moultrie's sentencing. Moultrie's appointed attorney,

1

J. Robert Haley ("Haley"), did not object to the PSR. The court held a sentencing hearing on September 27, 2011 and sentenced Moultrie to 60 months imprisonment for the conspiracy charge and 24 months imprisonment for the supervised release violation in relation to the 2004 charge, to be served consecutively. Additionally, the court ordered Moultrie to pay $222,773.83 restitution and a special assessment fee of $100.00.

On November 8, 2011, Moultrie filed the instant petition to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255. On February 6, 2012, the government filed a motion to dismiss Moultrie's petition. Moultrie filed a timely response in opposition to the government's motion on April 17, 2012, making this case ripe for judicial review. Moultrie then filed a motion to amend her motion to vacate on June, 22, 2012 and a motion requesting an evidentiary hearing on October 31, 2012.

## II. STANDARDS OF REVIEW

### A. Pro Se Petitioner

Moultrie appears pro se in this case. Federal district courts are charged with liberally construing petitions filed by pro se litigants to allow the development of a potentially meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9–10 (1980). Pro se petitions are therefore held to a less stringent standard than those drafted by attorneys. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). Liberal construction, however, does not mean that a court may ignore a clear failure in the pleading to allege facts that set forth a cognizable claim. See Weller v. Dep't of Soc. Servs., 901 F.2d 387, 390–91 (4th Cir. 1990).

**B. 28 U.S.C. § 2255**

Moultrie proceeds under 28 U.S.C. § 2255(a), which provides that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Moultrie, as the petitioner, must prove the grounds for collateral attack by a preponderance of the evidence.[1] See King v. United States, No. 05-0218, 2011 WL 3759730, at *2 (D.S.C. Aug. 24, 2011) (citing Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958)).

**C. Summary Judgment**

If, on a motion to dismiss, the court considers matters outside of the pleadings, such as a party's supporting memoranda and attachments, the court treats the motion as one for summary judgment. Fed. R. Civ. P. 12(d). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010). At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Because, in this case, the court considers matters outside the pleadings, it treats the government's motion as one for summary judgment.

---

[1] In deciding a § 2255 petition, the court shall grant a hearing, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The court has reviewed the record in this case and has determined that a hearing is not necessary.

## III.  DISCUSSION

A district court's resolution of a prisoner's § 2255 petition proceeds in two steps: (1) "the district court must determine whether the prisoner has met his burden of showing that his sentence is unlawful on one of the specified grounds" listed in § 2255(a), and (2) "if the prisoner's sentence is found unlawful on one of these grounds, the district court should grant the prisoner an 'appropriate' remedy, which includes discharge, resentencing, or a new trial." United States v. Pettiford, 612 F.3d 270, 277 (4th Cir. 2010).  "If the prisoner fails to show that his sentence is unlawful on one of the specified grounds under the threshold inquiry, however, 'the court must deny the petition.'" Id. (quoting United States v. Hadden, 475 F.3d 652, 661 (4th Cir. 2007)).

Construing her motion liberally, petitioner raises the following grounds for relief: (1) ineffective assistance of counsel; (2) violation of her due process rights; (3) judicial bias; and (4) prosecutorial misconduct.  The court will address each of Moultrie's claims in turn.

### A. Ineffective Assistance of Counsel

Moultrie claims that she received ineffective assistance of counsel.  Specifically, Moultrie claims that Haley formerly represented her co-defendant in a prior case and was therefore operating under an actual conflict of interest.  Moultrie further claims that Haley failed to listen to her version of the case, urged her to take a plea as a result of bias, failed to present mitigating evidence, failed to protect her, failed to verify the loss amounts asserted by the government, failed to challenge the amount presented in court,

and failed to object to the government's alleged breach of the plea agreement.[2]  Pet'r's Mot. to Vacate 4.

"A criminal defendant's Sixth Amendment right to effective assistance of counsel includes a right to counsel unhindered by conflicts of interest."  Mickens v. Taylor (Mickens I), 240 F.3d 348, 355 (4th Cir. 2001) (en banc).  In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance.  However, a claim for ineffective assistance of counsel based on a conflict of interest "presents a special case" in which a court must apply a different standard than the test applied under Strickland.  Mickens I, 240 F.3d at 355.  "To establish ineffective assistance of counsel on conflict of interest grounds, a petitioner must establish that (1) his attorney labored under 'an actual conflict of interest' that (2) 'adversely affected his lawyer's performance.'"  Id. (citing Cuyler v. Sullivan, 446 U.S. 335, 348 (1980)).  Adverse effect will not be presumed from the mere existence of a conflict of interest.  Rubin v. Gee, 292 F.3d 396, 401 (4th Cir. 2002).  "[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief."  Mickens v. Taylor (Mickens II), 535 U.S.162, 171 (2002) (quoting Cuyler, 446 U.S. at 349–50).  Rather, if the two-part test is satisfied, prejudice is presumed.  Mickens I, 240 F.3d at 355 (citing Cuyler, 446 U.S. at 349).

"To satisfy the first prong of the Cuyler test—the existence of an actual conflict of interest—a habeas petitioner must show that [his] interests diverge[d] [from his

---

[2] Moultrie makes innumerable allegations which are scattered throughout the motion to vacate, the response to the government's motion to dismiss, the motion for evidentiary hearing, and the motion to amend.  For efficiency and clarity, the court consolidated her allegations where possible.

attorney's] with respect to a material factual or legal issue or to a course of action.'" Stephens v. Branker, 570 F.3d 198, 209 (4th Cir. 2009) (quoting Gilbert v. Moore, 134 F.3d 642, 652 (4th Cir. 1998) (en banc)). To satisfy the second prong, a petitioner must then demonstrate that "the actual conflict of interest compromised [her] attorney's representation." Id. "[A]n 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." Rubin, 292 F.3d at 401 (quoting Mickens II, 535 U.S. at 172 n.5). The petitioner must establish adverse effect by: (1) identifying "a plausible defense strategy or tactic that his defense counsel might have pursued"; (2) showing that the defense strategy or tactic "was objectively reasonable under the facts of the case known to the attorney at the time of the attorney's tactical decision"; and (3) establishing "that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict." Mickens I, 240 F.3d at 361 (internal citations omitted).

Moultrie has failed to satisfy either prong of the Cuyler test. Most importantly, Moultrie has failed to show that Haley was operating under an actual conflict of interest at the time of his representation. Haley was appointed to represent Koshon Mitchell ("Mitchell"), Moultrie's co-defendant in the 2004 case, on May 28, 2004, but was relieved of his duties shortly thereafter on July 19, 2004. Haley Aff. 1. Although Mitchell was a co-defendant of Moultrie in a 2004 charge for conspiracy to commit bank fraud, Haley states that he has no memory, nor is there any evidence in Mitchell's file, that Moultrie was "ever the subject of any discussion with [] Mitchell or anyone else, during the course of [his] representation of [] Mitchell." Id. The court appointed Haley to represent Moultrie on January 12, 2011. Although Haley represented Moultrie during

6

her sentencing for both her supervised release violation related to the 2004 charge and her 2010 charge, Mitchell was not directly involved in any way with either charge. Id. Mitchell was neither listed as a witness nor mentioned during discovery and was not the subject of any discussions between Moultrie and Haley. Id. "[T]he possibility of conflict is insufficient to impugn a criminal conviction." Cuyler, 446 U.S. at 350 (1980) (emphasis added); see also Cudd v. Ozmint, No. 0:08-cv-2421, 2009 WL 3157318, at *8 (D.S.C. Aug. 11, 2009) ("A potential conflict of interest is insufficient, as 'joint representation does not amount to a per se constitutional violation.'" (quoting Wilson v. Moore, 178 F.3d 266, 280 (4th Cir. 1999))). Therefore, because there is absolutely no evidence of an actual conflict of interest, Moultrie has failed to meet the requirements of the first prong.

    Even if the court were to determine that there was an actual conflict of interest, Moultrie has failed to demonstrate that the alleged conflict adversely affected Haley's performance. Moultrie claims that Haley failed to investigate, failed to listen to her version of the case, urged her to take a plea deal because he was biased against her, failed to present mitigating evidence, failed to protect her, failed to verify the loss amounts presented in court, stated that Moultrie admitted her supervised release violation in court when she did not actually admit the violation, and failed to object to the government's alleged breach of the plea agreement. Pet'r's Mot. to Vacate 4. Although Moultrie makes these broad allegations, she fails to allege any facts that establish adverse effect to satisfy the Mickens factors. Moultrie's claims that Haley should have objected to the government's breach of the plea agreement and should not have advised her to take the plea deal could be interpreted as alternative "plausible defense strateg[ies]" under the first

prong of Mickens; however, Moultrie has failed to establish that the alternative strategies were objectively reasonable in light of the overwhelming evidence against her. Further, Moultrie does not provide any evidence that would link either Haley's failure to object or Haley's advice that she take the plea deal to the alleged conflict of interest. Therefore, Moultrie's claim for ineffective assistance of counsel based on conflict of interest fails.

Further, when analyzed under the Strickland test, Moultrie's other claims of ineffective assistance of counsel also fail. As stated above, when determining whether a convicted person is entitled to relief based on ineffective assistance of counsel, courts apply a two-part test promulgated by the Supreme Court in Strickland. "To establish cause for [a] default based upon ineffective assistance of counsel, [petitioner] must show that [his] attorney['s] performance fell below an objective standard of reasonableness and that [he] suffered prejudice as a result." United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999) (citing Strickland, 466 U.S. at 687).

Under the performance prong, a lawyer's performance is deficient when his representation falls "below an objective standard of reasonableness," as measured against "prevailing professional norms." Strickland, 466 U.S. at 688. "[T]he reasonableness of counsel's challenged conduct" is judged "on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. "To guard against hindsight bias and unfair 'second-guess[ing],' a defendant must overcome 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" United States v. Baker, 719 F.3d 313, 318 (4th Cir. 2013) (quoting Strickland, 466 U.S. at 689).

There is no evidence that Haley's performance fell below an objective standard of reasonableness or that Moultrie suffered prejudice. Haley met with Moultrie, Special

8

Agent Ralph Keys, and Assistant U.S. Attorney Rhett DeHart on "enumerable occasions to determine the strength of the Government's case, and to determine whether there were any viable defenses to the charges." Haley Aff. 2. Haley further stated that he reviewed all discovery and listened to telephone calls between Moultrie and her son "in an effort to uncover any facts that would support a defense or could be used in mitigation." Id. Haley received numerous favorable letters that he provided the court and used to argue on Moultrie's behalf during her sentencing. Id.

Haley also stated that he always listened to Moultrie's version of the case and met with Moultrie on numerous occasions. Id. Haley also met with the U.S. Attorneys to try to convince them of Moultrie's story. Id. He recommended that she enter into a plea agreement based on the evidence against her and his belief that a plea was entirely in her best interest. Id. Further, Haley presented mitigating evidence during her sentencing, including numerous advantageous letters, in an effort to receive favor in the eyes of the court. Id.; see also Sentencing Tr. 8–14. Additionally, the evidence shows that Moultrie did indeed admit the supervised release violation in court on July 27, 2011 during her sentencing. Sentencing Tr. 4. Therefore, Moultrie's blanket assertions that Haley failed to do things Moultrie claims he should have done fall well short of establishing that Haley's representation fell below an objective standard of reasonableness. See Gatlin v. United States, No. 4:11-cv-3313, 2012 WL 4473116, at *7 (D.S.C. Sept. 26, 2012) ("In each instance Petitioner has made an assertion that counsel has failed to do something that Petitioner feels he should have done, but he has not shown that counsel's performance fell below an objective standard of reasonableness, much less that any deficiency in counsel's representation resulted in prejudice to Petitioner.").

Further, there is no indication of prejudice considering the overwhelming evidence of Moultrie's guilt. A defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet. See Hill v. Lockhart, 474 U.S. 52, 59 (1985). To establish prejudice under the second prong of the Strickland test, the petitioner must demonstrate that the alleged ineffective performance affected the outcome of the plea process by "show[ing] that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. After executing a search warrant on Moultrie's residence and car, authorities found stolen mail, counterfeit checks, computer equipment used to make counterfeit business checks, and the names of approximately 100 check payees. PSR ¶¶ 7–8. Moultrie admitted her involvement in the check cashing conspiracy and provided the authorities with detailed information on her involvement in the conspiracy and the other members of the conspiracy. Id. at ¶ 8. In light of the evidence against her, there is no reasonable probability that Moultrie would not have pleaded guilty. Thus, even if the court were to determine that Haley failed to meet an objective standard of reasonableness, there is no evidence that Moultrie suffered prejudice.

For the reasons stated above, Moultrie's claim for ineffective assistance of counsel fails.

### B. Improper Restitution and Sentence

Moultrie next claims that the court miscalculated the loss amounts for her restitution and therefore improperly calculated her sentence. Pet'r's Mot. 1-2. Specifically, Moultrie claims that the district court did not consider her financial resources or earning ability, charged her with instruments "not created by me and weren't

[sic] found in my computer," ordered multiple defendants to pay restitution amounts in excess of the amount of actual loss, and based her sentence on an incorrect restitution amount calculated from the intended loss. Id. at 6.

After her sentencing, Moultrie signed a waiver stating that she did not want to appeal her sentence and that she discussed her right to do so with her attorney. Mot. to Dismiss Ex. 3. Moultrie did not challenge her sentence on direct appeal but now contests her sentence in a collateral attack. She claims that she relied on Haley's erroneous advice in failing to file a direct appeal. Pet'r's Resp. 6.

"In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." United States v. Mikalajunas, 186 F.3d 490, 492–93 (4th Cir. 1999). Cause that can overcome a procedural default "must turn on something external to the defense," such as ineffective assistance of counsel. Id. at 493. Further, a petitioner must show "actual innocence by clear and convincing evidence" to establish that a miscarriage of justice would result from the court's refusal to hear the collateral attack. Id. "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." Bousley v. United States, 523 U.S. 614, 621 (1998) (quoting Mabry v. Johnson, 467 U.S. 504, 508 (1984)).

Although Moultrie signed a waiver stating that she did not wish to appeal her sentence and failed to file a direct appeal, she now claims that her waiver "was based on erroneous advice of Mr. Haley." Resp't's Mot. to Dismiss Ex. 2; Pet'r's Resp. 6. Thus,

she is procedurally defaulted from challenging her sentence in this § 2255 motion unless she can establish cause and prejudice. See Bousley, 523 U.S. at 621 ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." (internal quotations and citations omitted)). As outlined above, Moultrie was failed to establish cause because there is no evidence that Haley's representation fell below an objective standard of reasonableness. Further, in light of the overwhelming evidence of her guilt, Moultrie did not suffer prejudice.

Even of the court were to consider her challenges to the amount of restitution ordered, the restitution award was proper. "Just as conspirators are substantively liable for the foreseeable criminal conduct of a conspiracy's other members[,] . . . they are responsible at sentencing for co-conspirators' reasonably foreseeable acts and omissions . . . in furtherance of the jointly undertaken criminal activity." United States v. McHan, 101 F.3d 1027, 1043 (4th Cir. 1996) (internal quotations omitted). "[I]n order to attribute to a defendant for sentencing purposes the acts of others in jointly-undertaken criminal activity, those acts must have been within the scope of the defendant's agreement and must have been reasonably foreseeable to the defendant." United States v. Gilliam, 987 F.2d 1009, 1012–13 (4th Cir. 1993). The sentencing guidelines define loss as "the greater of the actual loss or intended loss." U.S.S.G. 2B1.1. As a matter of law, "the Guidelines permit courts to use intended loss in calculating a defendant's sentence, even if this exceeds the amount of loss actually possible, or likely to occur, as a result of the defendant's conduct." United States v. Miller, 316 F.3d 495, 502 (4th Cir. 2003). The government is only required to prove loss by a preponderance of the evidence and

"the loss need not be determined with precision." Id. at 503. "The court need only make a reasonable estimate of the loss, given the available information." Id. at 503 (quoting U.S.S.G. § 2F1.1, cmt. n. 9). Additionally, pursuant to 18 U.S.C. § 3664(f)(1)(A), courts must order full restitution regardless of the defendant's economic circumstances.

Moultrie was the "manager and supervisor" of a conspiracy from which the actual loss was $445,547.66. PSR ¶ 10. The government supported the actual loss amount from the conspiracy with records from all six victims as well as a list of the ninety-eight individuals and businesses whose mail was stolen in furtherance of the conspiracy. Id. The court ordered Moultrie to pay $222,773.83 in restitution, representing one-half of the actual loss. Therefore, the restitution amount is proper.

### C. Due Process

Moultrie next claims that her due process rights were violated regarding her supervised release violation. Specifically, she claims that she never admitted the bond violations, never saw the evidence against her, was not provided an opportunity to confront witnesses, and did not receive credit for time served.

As stated above, Moultrie procedurally defaulted her constitutional claims for violation of her due process rights by failing to bring the claims on direct appeal. See Bousley, 523 U.S. at 621 ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent."). However, Moultrie's claims also fail on the merits.

Moultrie first claims that she never admitted her supervised release violation in court and did not see the evidence presented against her. To the contrary, the record

shows that Moultrie was aware of the evidence against her. During her sentencing, the court asked Moultrie if she had the opportunity to go over her PSR with her lawyer, and Moultrie replied affirmatively. Sentencing Tr. 2:23-25. The PSR states that "the defendant admitted to the facts related to the indictment in that she stole mail, used the checks removed therefrom to create counterfeit business checks, recruited others to cash the checks, and divided the proceeds between herself and the check cashers." PSR ¶ 14. Further, during her sentencing, the court asked Moultrie whether she had "plenty of time to go over [her] supervised release violation report with [her] lawyer," and Moultrie responded affirmatively. Sentencing Tr. 4:5-7. The court then asked Moultrie: "You're pleading guilty to that offense also, is that correct?" Id. at 4:8-9. Moultrie again responded affirmatively. Id. at 4:10. Clearly, Moultrie was aware of the evidence against her and admitted her supervised release violation to her attorney, the government, and the court.

Moultrie next claims that she did not receive a revocation hearing prior to the final decision on revocation. Pet'r's Mot. 5. However, Moultrie waived her right to a preliminary hearing on January 10, 2010 in writing. ECF No. 396. Moultrie made a final appearance on July 27, 2011. ECF No. 442. Moultrie does not claim that her waiver was involuntary. Therefore, her claim fails.

Moultrie next claims that the court failed to give her credit for time served in custody between January 8, 2010 to December 16, 2010. However, the district court is not afforded the discretion to determine whether a defendant should receive credit for time served in custody prior to sentencing. Rather, the Bureau of Prisons determines whether a defendant should get credit for time served. See United States v. Gregory, 1 F.

14

App'x 167, 170 (4th Cir. 2001) ("The Attorney General, through the Bureau of Prisons (BOP), is authorized to award credit for time served at the time the defendant begins to serve his federal sentence . . . A district court has no authority to compute credit at sentencing"' (citing 18 U.S.C. § 3585(b) (1994); United States v. Wilson, 503 U.S. 329, 333–34, (1992))).

Therefore, Moultrie's due process claims also fail.

### D. Bias

Moultrie claims that she suffered from judicial bias. However, Moultrie provides absolutely no evidence or basis to support a claim of bias, but only directs the court to statements made during Moultrie's sentencing regarding her claimed drug addiction and ability to pay restitution. Nor can Moultrie demonstrate any prejudice resulting from the alleged bias.

Further, the proper vehicle by which Moultrie may claim judicial bias is by filing a motion for recusal or disqualification. See United States v. Deleston, No. 2:99-cr-00751, 2009 WL 4808585, at *1 (D.S.C. Dec. 9, 2009) ("This matter is before the court on defendant's latest motion for relief under 28 U.S.C. § 2255, including an accompanying request for an evidentiary hearing. Defendant has also moved for the undersigned to recuse himself from further participation in this case."). Notably, Moultrie never raised the issue during her sentencing, never filed a motion for recusal, and failed to raise the issue on direct appeal.

Therefore, Moultrie's claim of judicial bias also fails.

### E. Prosecutorial Misconduct

In a motion to amend filed after the government filed the present motion to dismiss, Moultrie adds a claim for prosecutorial misconduct.[3] Moultrie alleges that the government committed prosecutorial misconduct by refusing to move for downward departure despite its agreement to do so in the plea agreement in exchange for Moultrie's substantial assistance. The government argues that Moultrie failed to comply with the terms of the plea agreement because she violated the terms of her bond. Resp't's Mot. to Dismiss 9. In response, Moultrie argues that the plea agreement was not signed until after she was arrested for violation of her bond conditions. Pet'r's Mot. to Amend 2-3.

Moultrie has the "burden of showing by a preponderance of the evidence that the Government breached the plea agreement." United States v. Westbrook, 408 F. App'x 744, 746 (4th Cir. 2011). The determination of whether the defendant has provided substantial assistance is within the government's discretion. United States v. Westbrook, 408 F. App'x 744, 746 (4th Cir. 2011) (citing United States v. Snow, 234 F.3d 187, 190 (4th Cir. 2000)). "The filing of a motion for sentence reduction based on substantial assistance provided by a defendant is within the Government's sole discretion." United States v. Henson, 468 F. App'x 229, 230 (4th Cir. 2012). However, a court may remedy the government's failure to move for a downward departure if (1) "the government obligated itself to move for a reduction under the terms of the plea agreement," or (2) "the government's refusal to move for a reduction was 'based on an unconstitutional motive' or 'was not rationally related to any legitimate Government end[.]'" Id. (citing

---

[3] In her original § 2255 motion, Moultrie does reference the government's failure to move for downward departure, but does not title the claim prosecutorial misconduct.

United States v. Conner, 930 F.2d 1073, 1076 (4th Cir. 1991); Wade v. United States, 504 U.S. 181, 185–86 (1992); United States v. Butler, 272 F.3d 683, 686 (4th Cir. 2001)).

The plea agreement states that "[p]rovided the Defendant cooperates pursuant to the provisions of this Plea Agreement, and that cooperation is deemed by the Government as providing substantial assistance in the investigation or prosecution of another person who has committed an offense, the Government agrees to move the Court for a downward departure or reduction" of Moultrie's sentence pursuant to 18 U.S.C. § 3553(e). Plea Agreement ¶ 10 (emphasis added). The language of the plea agreement did not create an enforceable obligation. To the contrary, under the terms of the plea agreement, the government had the sole discretion to determine whether Moultrie's cooperation was considered substantial assistance to warrant moving for downward departure. Clearly, in light of Moultrie's arrest for violating the conditions of her bond less than six weeks after her initial arrest, the government did not feel that Moultrie's cooperation rose to the level of substantial assistance to warrant a downward departure.

Further, the record fails to show that Moultrie provided substantial assistance. The plea agreement stated that "the obligations of the Government within the Plea Agreement are expressly contingent upon the Defendant's abiding by federal and state laws and complying with the terms and conditions of any bond." Plea Agreement ¶ 5. Under the terms of the agreement, if Moultrie failed to comply with the provisions of the agreement, the government had the right, "at its sole election, to void all of its obligations" under the agreement. Id. at ¶ 6. Although she cooperated with the government, she continued to engage in criminal activity until she remained in custody without bond. Moultrie does not allege that the government had an unconstitutional

17

motive or that its refusal to move for a downward departure was not rationally related to any legitimate government end, nor is there any evidence in the record to support such a claim. Therefore, Moultrie's claim for prosecutorial misconduct fails. See United States v. Thompson, 102 F. App'x 770, 771 (4th Cir. 2004) ("Because the agreement did not obligate the government to move for a departure, the district court was without authority to compel a motion unless [the petitioner] demonstrated that the government's failure to file the motion resulted from an unconstitutional motive or was not rationally related to a legitimate government end.").

### F. Request for Evidentiary Hearing

Finally, the court denies Moultrie's request for an evidentiary hearing because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); see also United States v. Young, 644 F.2d 1008, 1013 (4th Cir. 1981) ("Section 2255 of Title 28 U.S.C. provides that unless the record conclusively shows that the prisoner is entitled to no relief, the district court should conduct an evidentiary hearing and state its findings and conclusions.").

## IV.   CONCLUSION

For the reasons set forth above, the court hereby **DENIES** petitioner's motion to vacate, set aside, or correct her federal sentence pursuant to 28 U.S.C. § 2255, **GRANTS** the government's motion to dismiss, and **DENIES** petitioner's request for an evidentiary hearing. All other pending motions are deemed **MOOT**.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 20, 2015**
**Charleston, South Carolina**